IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

|  |  |
|---|---|
| IN RE: | Chapter 7 |
| TIMOTHY WALLANDER | Bankruptcy No. 04-01064 |
| Debtor. | |
| ANGELA WALLANDER | |
| Plaintiff. | Adversary No. 04-9112 |
| vs. | |
| TIMOTHY WALLANDER | |
| Defendant. | |

**ORDER RE: COMPLAINT TO DETERMINE DISCHARGEABILITY**

The above captioned matter came on for hearing on April 26, 2005 on Plaintiff's complaint to determine dischargeability of a debt. Plaintiff Angela Wallander ("Plaintiff") was represented by attorney A. J. Thomas. Defendant/Debtor Timothy Wallander ("Debtor") was represented by attorney David Nadler. After the presentation of evidence and arguments of counsel, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

**STATEMENT OF THE CASE**

Plaintiff Angela Wallander alleges that, under 11 U.S.C. §§ 523 (a)(2)(B) and 523 (a)(15), a loan consolidation debt jointly owed by Debtor Timothy Wallander is not dischargeable in Defendant's Chapter 7 bankruptcy. Debtor alleges that the debt is dischargeable.

**FINDINGS OF FACT**

Debtor filed for Chapter 7 relief on March 24, 2004, approximately three months after the entry of the parties' Dissolution Decree which was entered on December 23, 2003. Debtor listed a $12,000 obligation to Cedar Rapids Credit Union (the "Credit Union") on Schedule F. Debtor also listed a dissolution obligation to Plaintiff in the same amount. At

the time of the filing of the petition, the obligation to the Credit Union had a balance of $12,163.51.  The parties agree that the debt in question is a non-support dissolution debt. Plaintiff asserts that Debtor entered into the Stipulation with the intent of discharging the Credit Union obligation in bankruptcy.

The parties have four minor children.  The Stipulation Agreement executed with the Dissolution Decree ("Stipulation") provides for joint custody of the minor children and states that each party will have primary responsibility for two of the children.  The Stipulation also provides that Debtor pay child support to Plaintiff of $731 per month.  Neither party is responsible for the payment of alimony.

The Stipulation divided the marriage property as follows. Plaintiff was awarded sole ownership of a 1997 Dodge Caravan and Debtor was awarded "any vehicles not awarded to Petitioner."  Debtor testified that this award included a late model Isuzu pick-up truck.  At the time of the dissolution, neither the Debtor nor the Plaintiff had any interest in real property.  Plaintiff was awarded any monies received on account of the parties' joint 2003 income tax returns.

Finally, the Stipulation provides that Debtor

> agrees to be responsible for any of his own debts and shall hold the [Plaintiff] harmless for any and all of his debts, including the $12,000 loan currently in both parties name, which shall be refinanced into [Debtor's] name only within 30 days of the date of the Decree . . . .

See Defendant's Exhibit A-9.

Debtor failed to refinance the $12,000 loan and Plaintiff continues to remain liable as a co-debtor.  The debt at issue involves a $12,000 obligation to Credit Union.  Debtor and Plaintiff obtained this loan in order to consolidate several other outstanding obligations.  This loan is currently in default and the Credit Union has repossessed the Isuzu pick-up, which, in addition to the Dodge Caravan, were used to secure the loan obligation.  Since the Dissolution, Plaintiff has made payments on the $12,000 loan totaling $1,150.  These payments consisted of two full monthly payments of $450 and one partial payment of $250.  Plaintiff testified that these payments were made in order to keep the Credit Union from repossessing her Dodge Caravan.  Plaintiff stated that Debtor

agreed to take sole responsibility for the $12,000 debt in consideration for her concession not to seek alimony. Debtor denies this statement and asserts that Plaintiff's concession was in consideration for monies received from the 2003 income tax return.

The parties' respective living situations have changed since the filing of the Decree. Debtor has remarried and recently took up residence in a house that his mother purchased for his use. He lives with his new wife and three minor children. Debtor's remarriage and new house have increased his living expenses by approximately $600 per month. Debtor has retained his job as a truck mechanic and continues to do some freelance work. Debtor's wife is currently unemployed. Plaintiff resides with her fiancé and two minor children. Both Plaintiff and her fiancé work and, in addition to her job as a food server, Plaintiff has picked up a second job milking cows. Despite these changes, neither the Plaintiff nor the Debtor are in a strong financial position.

## CONCLUSIONS OF LAW

The dischargeability of non-support dissolution debt incurred in the course of a divorce is normally governed by § 523(a)(15) of the Code. Under certain circumstances, however, such debt can be excepted from discharge under § 523(a)(2). See In re Guske, 243 B.R. 359, 365 (B.A.P. 8th Cir. 2000) (holding that, in certain circumstances, non-support dissolution debts can be excepted from discharge under § 523(a)(2)(A)); In re Capelli, 261 B.R. 81, 92 (Bankr. D. Conn. 2001) (finding a non-support dissolution debt non-dischargeable under § 523(a)(2)(B)). A plaintiff must prove the elements of its claim under § 523(a) by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 288 (1991).

## SECTION 523(a)(2)

The Bankruptcy Code prohibits "debtors from discharging liabilities incurred on account of their fraud." Cohen v. De La Cruz, 523 U.S. 213, 217 (1998). Fraudulent debts are generally excepted from discharge under § 523(a)(2). Guske, 243 B.R. at 87. In order to be excepted from discharge under this section, a debt must be "for money, property, services, or an extension, renewal, or refinancing of credit." 11 U.S.C. § 523(a)(2). A debt arising from a dissolution decree or property settlement agreement constitutes a debt as defined in § 523(a)(2). See Guske 243 B.R. at 359 (stating that certain non-support dissolution debt constitutes a "renewal"

3

of the original debt); In re Shreffler 319 B.R. 113, 120 (Bankr. W.D. Pa. 2004) (citing In re Balm, No. 04-9060, slip op. at 3 (Bankr. N.D. Iowa July 2, 2004) (holding that a "decree of divorce gives rise to a new and distinct obligation")). The fact that new funds were not advanced does not change the result that a non-support dissolution obligation constitutes an extension of credit. Capelli, 261 B.R. at 87.

Section 523(a)(2)(A) excepts a debt from discharge if it is obtained by "false pretenses, a false representation, or actual fraud." In re Wheeler, 317 B.R. 783, 788 (Bankr. N.D. Iowa 2004)); Guske, 243 B.R. at 362. As this Court has previously stated, subsection (a)(2)(A) applies to situations other than when the underlying statements are "respecting the debtor's . . . financial condition." In re Wheeler, No. 03-9157, slip op. at 3 (Bankr. N.D. Iowa Nov. 22, 2004). Subsection (a)(2)(B) applies where the relevant written statements are "in writing" and "respecting the debtor's . . . financial condition." Id. Therefore, the question whether (a)(2)(A) or (a)(2)(B) applies turns on whether the alleged false statements are respecting a debtor's financial condition. Id. (citing First Nat'l Bank v. Pontow, 111 F.3d 604, 609 (8th Cir. 1997)). Such statements are not limited to balance sheets or other financial forms, but can include a much broader class of statements. First National Bank, 111 F.3d at 609.

The elements of 523(a)(2)(B) require that: (1) the false financial statement is a writing respecting the debtor's financial condition; (2) the financial statement is materially false; (3) the debtor intended to deceive; and (4) the creditor reasonably relied on the statement. In re McCleary, 284 B.R. 876, 885 (Bankr. N.D. Iowa 2002). The first element requires application of a two-prong test. The first prong is a determination of the existence of a document and the second prong focuses on the content of the document. Id. An objecting creditor who relies on a debtor's oral misrepresentations of his or her financial wherewithal cannot satisfy the threshold requirement for nondischargeability under § 523(a)(2)(B). Id. To satisfy the second prong for nondischargeability under § 523(a)(2)(B), the writing must contain a statement of "an entity's overall financial health and not a mere statement as to a single asset or liability." In re Soderlund, 197 B.R. 742, 745 (Bankr. D. Mass 1996).

In respect to the second element, a financial statement is materially false if it "paints a substantially untruthful

4

picture of a debtor's financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." Capelli, 261 B.R. at 90 (finding that the withholding of certain liabilities from a debtor's dissolution financial statements constituted a materially false statement of financial condition).  A debtor's written statements regarding an ability or intention to pay certain debts, even if materially false, do not satisfy the first two elements for nondischargeability under § 523(a)(2)(B) as they are not statements respecting the debtor's financial condition.  Soderlund, 197 B.R. 742.

Plaintiff alleges that Debtor's non-support dissolution obligation to the Credit Union is nondischargeable under § 523(a)(2)(B).  She states that Debtor's signature on the Stipulation agreement created a "materially false" written statement respecting his financial condition.  Specifically, she argues that from the time he entered into the Stipulation, instead of intending to follow the provisions regarding the assumption of the $12,000 obligation, Debtor intended to discharge his portion of the debt in bankruptcy.  This debt meets the threshold requirement under § 523(a)(2) as it was both a refinancing and renewal of credit.  See Capelli 261 B.R. at 90; Guske 243 B.R. at 359.

Even if Plaintiff's allegations are true, the $12,000 obligation can not be excepted from discharge under § 523(a)(2)(B).  A stipulation agreement, allegedly signed with an intent to defraud, does not satisfy the definition of a materially false statement of financial condition as contemplated by the first and second elements of the test.  According to Plaintiff's theory, Debtor's alleged misrepresentations involved his intent to restructure and repay the Credit Union obligation.  This is not a false statement of his financial health.  A written statement regarding an intent to repay a debt does not satisfy the first element of the test for nondischargeability under § 523(a)(2)(B).  Moreover, it also fails to satisfy the second element because the alleged materially false statements were not in regard to his financial condition.  As Plaintiff has failed to satisfy the first two elements of the test for dischargeability, Debtor's $12,000 obligation cannot be excepted from discharge under § 523(a)(2)(B).

Although Plaintiff has not alleged that this debt is nondischargeable under § 523(a)(2)(A), the Court notes that the requirements for nondischargeability under this subsection are better tailored to her averments than (a)(2)(B).  See

Guske, 243 B.R. at 363-65; Wheeler, 317 B.R. at 788.  However, Plaintiff did not plead this section and the Court does not consider whether this debt should be excepted from discharge under § 523(a)(2)(A).

### SECTION § 523(a)(15)

Section 523(a)(15) precludes the discharge of non-support debt that is

> incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court or record . . . unless –
>
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . . or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15).  For a debt to be excepted from discharge under § 523(a)(15), it must not be of the kind described in § 523(a)(5).  In re Fellner, 256 B.R. 898, 902 (B.A.P. 8th Cir. 2001).  If the debt satisfies this threshold requirement as a non-support property settlement award, "a rebuttable presumption of nondischargeability is created."  In re Moeder, 220 B.R. 52, 56 (B.A.P. 8th Cir. 1998).  The burden then shifts to the debtor to establish either (1) an inability to pay the debt; or (2) that the benefit received from discharging the debt would outweigh the corresponding detriment to the plaintiff.  Id.

### § 523(a)(15)(A):  ABILITY TO PAY

Under § 523(a)(15)(A), a non-support obligation is discharged if "the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent." 11 U.S.C. § 523(a)(15)(A).  Given the similarity in the language of 11 U.S.C. § 1325(b)(2) to § 523(a)(15)(A), courts apply the Chapter 13 disposable income

6

analysis to (a)(15)(A).  In re Brown, 302 B.R. 637, 644 (Bankr. N.D. Iowa 2003).

The application of this analysis involves an investigation into (1) whether the debtor's essential and discretionary expenditures are reasonably necessary; and (2) whether the debtor has sufficient disposable income to pay the debt within a reasonable time.

**1. ARE DEBTOR'S EXPENSES REASONABLY NECESSARY?**

While some courts analyze the reasonableness of a debtor's expenses by looking at each expense individually, this Court takes a more holistic approach and separates the expenses into two main categories: (1) essential expenses, which include items such as food, utilities, housing, and health care; and (2) discretionary expenses.  In re O'Shaughnessy, 301 B.R. 24, 31 (Bankr. N.D. Iowa 2003).  The Court then determines whether the aggregate expenses in each category are reasonably necessary.  Id.

In determining if a debtor's expenses are reasonably necessary, the Court notes that such a standard does not require the debtor to "live by bread alone, but allow[s] some latitude regarding discretionary spending for items such as recreation, clubs, entertainment, newspapers, charitable contributions, and other expenses."  Id.  This latitude is tempered by the Court's attempt to "seek a balance between allowing a debtor a reasonable lifestyle and insuring a serious effort to pay creditors by eliminating unnecessary and unreasonable expenses."  In re Eiklenborg, 286, B.R. 718, 722 (Bankr. N.D. Iowa 2002).

In interrogatories, Debtor listed his current monthly expenses as follows:

| | | |
|---|---|---:|
| 1. | Rent | $736.00 |
| 2. | Utilities | 190.00 |
| 3. | Water and Sewer | 100.00 |
| 4. | Telephone | 60.00 |
| 5. | Cable | 30.00 |
| 6. | Food | 500.00 |
| 7. | Clothing | 200.00 |
| 8. | Laundry/Dry Cleaning | 50.00 |
| 9. | Medical/Dental | 50.00 |
| 10. | Transportation | 300.00 |
| 11. | Insurance | 183.49 |
| 12. | Installment Payments | 308.00 |

7

```
         13. Child Support                           875.00
         14. Auto License                             35.00
         15. School Lunches                          222.00
         16. Haircuts                                 36.00
                                                 ──────────
             Total Monthly Expenses             $3,585.49
```

Debtor has not listed any significant discretionary expenses. There is no allowance made for entertainment and all of the listed expenses appear reasonable. Several of Debtor's monthly expenses have increased since the filing of his bankruptcy petition. Most notably, his housing expense has increased from $500 per month to $736 per month. He previously did not have a category for school lunches. The only discretionary expenses are cable TV at $30 and monthly haircuts at $36. These expenses are not unreasonable in the aggregate. At trial, Debtor testified that the $875 per month expense for child support included payments for both current support and arrearages. At present, Debtor is current on his child support obligation to plaintiff and arrearages have been paid in full. Thus, the Court will adjust the amount to $731.00 per month – the amount provided for in the Stipulation.

Essential expenses include such items as food, utilities, housing and health expenses. Together with his child support payment, Debtor's necessary and essential expenses total $3,305. This amount is reasonable considering it includes support for two families.

## 2. DOES DEBTOR HAVE SUFFICIENT DISPOSABLE INCOME TO PAY THE DEBT?

Courts consider both the debtor's current and future financial situation when determining disposable income. Eiklenborg, 286 B.R. at 722. They must determine whether the debtor will be able to pay the non-support debt over a reasonable period of time. In re Hildreth, No. 99-9139F, slip op. at 5-6 (Bankr. N.D. Iowa Sep. 6, 2000) ("Determining ability to pay by reference to a reasonable period of time should ensure that the court's finding is realistic, and not merely a mathematical possibility.") The time period, however, is not limited to the length of a Chapter 13 plan. Id. at 6. While "presumptively a reasonable time to pay on debts, . . . there seems to be no reason to use the plan term as the upper limit of reasonableness of time." Id. In considering a debtor's ability to pay, the court may consider

the income of a new spouse or fiancé.  In re Shea, 221 B.R. 491, 499 (Bankr. D. Minn 1998).

Debtor listed net monthly income of $2,434.08 on Schedule I of his bankruptcy petition.  This amount includes his work at CR Mack and the income that he earns performing private mechanic work.  Debtor's spouse is currently unemployed as she decided to quit her job in order to spend time with her father who is terminally ill.  However, Debtor's spouse previously held a job as a warranty clerk which paid approximately $1,600 per month net of taxes and social security.  Additionally, Debtor indicated that his spouse's unemployment was temporary and that she would eventually rejoin the work force.  This addition of a second wage earner will increase Debtor's monthly net income to almost $4,000 per month which, after deducting Debtor's expenses, leaves a positive cash flow of approximately $700 per month.  Although Debtor does not currently have disposable income to repay the debt, his increased future household income will allow him to repay the debt within a reasonable period of time.

### § 523(a)(15(B): BENEFIT TO DEBTOR VERSUS DETRIMENT TO PLAINTIFF

Even if the Court determines that Debtor has the ability to pay under § 523(a)(15)(A), the debt may still be discharged under § 523(a)(15)(B) if "discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor."  11 U.S.C. § 523(a)(15)(B).  The critical factor in this analysis is comparison of the parties' standards of living.  Eiklenborg, 286, B.R. at 722; In re Johnson, No. 03-9032, slip op. at 5 (Bankr. N.D. Iowa Feb. 12, 2004).  This exception to nondischargeability does not apply where a debtor's standard of living is "above or about equal to" that of the ex-spouse.  Johnson, No. 03-9032, slip op. at 5.

Plaintiff and her fiancé have a combined monthly net income of approximately $3,497.  This amount includes Plaintiff's child support of $731 per month.  Plaintiff listed her current expenses as follows:

```
            1. Rent                             $435.00
            2. Electricity and Heat              400.00
            3. Telephone                         100.00
            4. Cable                              40.00
            5. Home Maintenance                   60.00
            6. Food                              680.00
```

9

```
 7. Clothing                          300.00
 8. Medical/Dental                    300.00
 9. Transportation                    100.00
10. Renter's Insurance                 30.00
11. Auto Insurance                    202.00
12. Auto Payments                     174.00
13. Revolving Debt                    235.00
14. "School"                           75.00
                                    ─────────
```

**Total Monthly Expenses        $3,131.00**

Considering only the expenses listed above, Plaintiff currently has positive cash flow of approximately $350 per month. Additionally, the parties enjoy similar standards of living. Each is currently residing in a home with their new spouse and supporting several minor children. Neither party has any significant discretionary expenditures.

Payments on the debt in question are scheduled at $450 per month. If Debtor is allowed to discharge his obligation to the Credit Union, Plaintiff's monthly expenses will increase to approximately $3,580 per month. This amount is almost $100 more than her combined net monthly income. On the other hand, given Debtor's potential future family income, he will be able to make full payments on the debt. Thus, the benefit to Debtor from discharging this debt does not outweigh the detriment to Plaintiff.

**CONCLUSION**

The debt owed by Timothy Wallander to Cedar Rapids Credit Union is not excepted from discharge under § 523(a)(2)(B), but it does fall within the scope of § 523(a)(15). If this non-support dissolution debt is not satisfied, Plaintiff Angela Wallander will be legally obligated to pay the debt. Section 523(a)(15) was enacted for the specific purpose of prohibiting the transfer of debts from an individual to a former spouse by declaring bankruptcy. O'Shaughnessy, 301 B.R. at 32. This is the situation presented here.

A non-support dissolution debt is dischargeable if a debtor can prove, by a preponderance of the evidence, the applicability of the exceptions found in § 523(a)(15)(A) and (B). Debtor has failed to establish either exception by a preponderance of the evidence. Debtor's potential household income is sufficient to cover his existing monthly expenses as well as the dissolution debt. Furthermore, Debtor enjoys a

10

standard of living which, in every objective sense, is equal to or superior to that of Angela Wallander.

Therefore, the Court orders as follows:

**WHEREFORE**, for the reasons set forth herein, the complaint to determine dischargeability filed by Plaintiff and against Defendant is GRANTED in part and DENIED in part.

**FURTHER**, Plaintiff's request to except the debt from discharge under § 523(a)(15) is GRANTED.

**FURTHER**, Plaintiff's request to except the debt from discharge under § 523(a)(2)(B) is DENIED.

**FURTHER**, the non-support dissolution debt owed by Defendant to Cedar Rapids Credit Union is excepted from discharge under 11 U.S.C. § 523(a)(15).

**FURTHER**, if the amount owed or the terms of repayment are in controversy, the amount or the terms can be determined by the dissolution court.

Dated and Entered   May 5, 2005

_____
PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE